**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA
EASTERN DIVISION**

| | | |
|---|---|---|
| **NATIONWIDE AGRIBUSINESS** | ) | |
| **INSURANCE COMPANY,** | ) | **CIVIL ACTION NO.  20-2890** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **JUDGE** |
| **v.** | ) | |
| | ) | |
| **SMITTY'S SUPPLY, INC, and** | ) | **MAGISTRATE** |
| **TRACTOR SUPPLY COMPANY,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, by and through its attorneys, Jay Sever of Phelps Dunbar, LLC, for its Complaint for Declaratory Judgment, states as follows:

**INTRODUCTION**

1.      This is a declaratory judgment action brought pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201, wherein, Nationwide Agribusiness Insurance Company ("Nationwide") seeks a determination as to what portion, if any, is it required to indemnify Smitty's Supply, Inc. ("Smitty's") and/or Tractor Supply Company ("Tractor Supply") for the settlement in the lawsuit entitled: *Shawn Hornbeck et. al. v. Tractor Supply Company et. al.*, No. 4:18-cv-00523, filed in the U.S. District For the Western District of Missouri Western Division ("*Hornbeck* Action").

2.      An actual controversy exists wherein Smitty's and Tractor Supply assert Nationwide owes an obligation to fund a settlement involving claims for its sale of its tractor hydraulic fluid that failed to meet its touted specification.

## PARTIES

3.    Plaintiff Nationwide is an Iowa corporation with its principal place of business in Iowa.

4.    Defendant Smitty's is a Louisiana corporation, with its principal place of business in Louisiana.

5.    Defendant Tractor Supply is a Delaware corporation, with its principal place of business in Tennessee.

## JURISDICTION AND VENUE

6.    A real and justiciable controversy exists between Nationwide, Smitty's and Tractor Supply concerning Nationwide's respective rights and obligations under the Nationwide Policies.

7.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

8.    This Court has jurisdiction over the Defendants in this matter as Smitty's maintains its principal place of business in Louisiana and Tractor Supply operates retail stores in Louisiana.

9.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

**I.    HORNBECK COMPLAINT**

10.    On May 25, 2018, Underlying Plaintiffs Shawn Hornbeck and Monte Burgess filed a lawsuit naming Tractor Supply and Smitty's as Defendants. *See* May 25, 2018 Complaint attached hereto as Exhibit A.

11.     On December 28, 2019, a first amended class action complaint ("FAC") was filed, which added Dan Chevalier and Russ Mapes as Underlying Plaintiffs and Family Center of Harrisonville, Inc. as a defendant. *See* FAC attached hereto as Exhibit B.

12.     The FAC alleged that "[f]or years, Defendants, as well as other lubricant manufacturers and sellers, have deceptively and misleadingly labeled, marketed and sold tractor hydraulic fluid as '303' fluid meeting '303' specifications when, in fact, the '303' designation is obsolete and 303 specifications have not been available for over forty (40) years." Exhibit B, ¶ 1.

13.     The FAC alleged that "Defendants falsely and deceptively labeled, marketed and offered for sale the Super S Super Tract 303 Tractor Hydraulic Fluid (1) as meeting manufacturer specifications and being acceptable for use as hydraulic fluid, transmission fluid, and gear oil in older tractors and other equipment; (2) as a substitute for and satisfying John Deere's JD-303 specifications; (3) as a fluid that provides extreme pressure and anti-wear protection for tractor transmission, axles and hydraulic pumps; [and] (4) as a fluid that protects against rust and corrosion . . ." Exhibit B, ¶ 30.

14.     The FAC alleged that the Defendants knew or should have known the representations regarding the 303 THF Product were false, deceptive and misleading to consumers seeking to purchase tractor hydraulic fluid. Exhibit B, ¶38.

15.     The FAC alleged that in the summer of 2017, the Missouri Department of Agriculture ("MDA") tested the Defendants' 303 THF Product and concluded that the Defendants' product failed to meet any current specifications and were found to be underperforming to the point that damage was likely to result from use. Exhibit B, ¶¶ 46-48.

16.     The FAC alleged that on October 12, 2017, the MDA issued a letter to Smitty's and Tractor Supply with regard to Super S Super Trac 303 THF in which they were ordered to remove

the product from sale until changes are made to correct the labeling or the product. Exhibit B, ¶¶

52-55.

17.     Through the FAC, the Underlying Plaintiffs sought to have the following Class

certified:

> All persons and other entities who purchased Super S Super Tract 303
> Tractor Hydraulic Fluid in Missouri, at any point in time from May 25, 2013
> to present, excluding any persons and/or entities who purchased for resale.

Exhibit B, ¶ 79.

18.     The FAC asserted the following causes of action against the Defendants:

> Count I - Violation of Missouri Merchandising Practices Act Violations
> ("MMPA");
> Count II - Breach of Express Warranty;
> Count III - Breach of Implied Warranty of Merchantability;
> Count IV - Fraudulent Misrepresentation;
> Count V - Negligent Misrepresentation;
> Count VI - Unjust Enrichment;
> Count VII - Negligence;
> Count VIII - Breach of Implied Warranty of Fitness for Particular Purpose.

19.     The FAC alleged that the Underlying "Plaintiffs and Class Members: (a) paid a sum

of money for a product that was not as represented; (b) received a lesser product than labeled,

advertised and marketed; (c) were deprived of the benefit of the bargain because the 303 THF

Product was different than what Defendants represented; (d) were deprived of the benefit of the

bargain because the 303 THF Product had less value than what was represented; (e) did not receive

a product that measured up to their expectations as created by Defendants; and (f) suffered damage

to their equipment, including but not limited to excessive wear, leakage in the seals, exposure to

spiral gear damage, improper and poor shifting, wear and damage to the wet brakes, high pump

leakage, and damage from deposits, sludging and thickening." Exhibit B, ¶72.

## II.    NATIONWIDE PRIMARY POLICIES

20.    Nationwide issued a commercial general liability policy to Smitty's, bearing policy number CPP126853A, effective April 30, 2014 to April 30, 2015, which is subject to a $1,000,000 Each Occurrence limit, a $2,000,000 Products/Completed Operations Aggregate, and a $2,000,000 General Aggregate ("14-15 NW Primary Policy"). A true and correct copy of the 14-15 NW Primary Policy with premium information redacted is attached as Exhibit C.

21.    Nationwide issued a commercial general liability policy to Smitty's, bearing policy number CPP126853A, effective April 30, 2015 to April 30, 2016, which is subject to a $1,000,000 Each Occurrence limit, a $2,000,000 Products/Completed Operations Aggregate, and a $2,000,000 General Aggregate ("15-16 NW Primary Policy"). A true and correct copy of the 15-16 NW Primary Policy with premium information redacted is attached as Exhibit D.

22.    Nationwide issued a commercial general liability policy to Smitty's, bearing policy number CPP126853A, effective April 30, 2016 to April 30, 2017, which is subject to a $1,000,000 Each Occurrence limit, a $2,000,000 Products/Completed Operations Aggregate, and a $2,000,000 General Aggregate ("16-17 NW Primary Policy"). A true and correct copy of the 16-17 NW Primary Policy with premium information redacted is attached as Exhibit E.

23.    Nationwide issued a commercial general liability policy to Smitty's, bearing policy number CPP126853A, effective April 30, 2017 to April 30, 2018, which is subject to a $1,000,000 Each Occurrence limit, a $2,000,000 Products/Completed Operations Aggregate, and a $2,000,000 General Aggregate ("17-18 NW Primary Policy"). A true and correct copy of the 17-18 NW Primary Policy with premium information redacted is attached as Exhibit F.

24.    Nationwide issued a commercial general liability policy to Smitty's, bearing policy number CPP126853A, effective April 30, 2018 to April 30, 2019, which is subject to a $1,000,000

Each Occurrence limit, a $2,000,000 Products/Completed Operations Aggregate, and a $2,000,000 General Aggregate ("18-19 NW Primary Policy"). A true and correct copy of the 18-19 NW Primary Policy with premium information redacted is attached as Exhibit G.

25.     Nationwide issued a commercial general liability policy to Smitty's, bearing policy number CPP126853A, effective April 30, 2019 to April 30, 2020, which is subject to a $1,000,000 Each Occurrence limit, a $2,000,000 Products/Completed Operations Aggregate, and a $2,000,000 General Aggregate ("19-20 NW Primary Policy"). A true and correct copy of the 19-20 NW Primary Policy with premium information redacted is attached as Exhibit H. The 14-20 NW Primary Policies are collectively referred to herein as "NW Primary Policies."

26.     Subject to all their terms, conditions, limitations, definitions, endorsements and exclusions, the NW Primary Policies provide "bodily injury" liability coverage, "property damage" liability coverage, and "personal injury" or "advertising injury" liability coverage.

27.     Upon information and belief, the parties hereto do not dispute that Nationwide owes no obligation to Smitty's and Tractor Supply under the "bodily injury" and "personal and advertising injury" coverages of the NW Primary Policies.

28.     The "property damage" liability coverage of the NW Primary Policies provides, in part, as follows:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

> a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages . . .

* * *

29.    The NW Primary Policies further provide:

b.   This insurance applies to "bodily injury" and "property damage" only if:
(1)   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
(2)   The "bodily injury" or "property damage" occurs during the policy period.
(3)   Prior to the policy period, no insured listed under Paragraph 1. of Section II ---- Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.   "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** ---- Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.   "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** ---- Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1)   Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
(2)   Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
(3)   Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

* * *

## SECTION III --- - LIMITS OF INSURANCE

1.   The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
a.   Insureds;
b.   Claims made or "suits" brought; or
c.   Persons or organizations making claims or bringing "suits".

7

2. The General Aggregate Limit is the most we will pay for the sum of:
   a. Medical expenses under Coverage C;
   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and
   c. Damages under Coverage B.
3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

* * *

5. Subject to Paragraph 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:
   a. Damages under Coverage A; and
   b. Medical expenses under Coverage C because of all "bodily injury" and "property damage" arising out of any one "occurrence".

* * *

30.   The NW Primary Policies are, in part, subject to the following definitions:

**SECTION V – DEFINITIONS**

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:
   * * *
   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.
   * * *
13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
    * * *
16. "Products-completed operations hazard":

    a.   Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1) Products that are still in your physical possession; or

* * *

17.  "Property damage" means:

    a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

21.  "Your product":

    a. Means:

    (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      (a) You;

      (b) Others trading under your name; or

      (c) A person or organization whose business or assets you have acquired; and

    (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b. Includes:

    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    (2) The providing of or failure to provide warnings or instructions.

    c. Does not include vending machines or other property rented to or located for the use of others but not sold.

* * *

31.  Tractor Supply is not listed as a Named Insured on the NW Primary Policies.

32.  The NW Primary Policies are subject to a "Who Is An Insured" provision that provides, in part, as follows:

**SECTION II ---- WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

* * *

9

    c.  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    d.  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

* * *

33.    Effective June 10, 2016, the 16-17 NW Primary Policy contains an endorsement entitled "Additional Insured-Vendors" (CG 20 15 04 13) ("AI-Vendors Endorsement").

34.    The 17-20 NW Primary Policies are also subject to the AI-Vendors Endorsement.

35.    The AI-Vendors Endorsement provides, in part, as follows:

* * *

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
| --- | --- |
| Any person(s) or organization(s) with whom "you" have agreed in a valid written contract or written agreement, executed prior to loss, that such person(s) or organization(s) be added as an additional insured on "your" policy, as provided under this endorsement. | ALL PRODUCTS |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II ---- Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to throughout this endorsement as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business.

However:

1. The insurance afforded to such vendor only applies to the extent permitted by law; and
2. If coverage provided to the vendor is required by a contract or agreement, the insurance afforded to such vendor will not be broader than that which you are required by the contract or agreement to provide for such vendor.

**B.** With respect to the insurance afforded to these vendors, the following additional exclusions apply:

1. The insurance afforded the vendor does not apply to:
   a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;
   b. Any express warranty unauthorized by you;
   c. Any physical or chemical change in the product made intentionally by the vendor;
   d. Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;
   e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;
   f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;
   
   \* \* \*
   
   h. "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:
      **(1)** The exceptions contained in Subparagraphs d. or f.; or
      **(2)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**C.** With respect to the insurance afforded to these vendors, the following is added to **Section III ---- Limits Of Insurance**:
If coverage provided to the vendor is required by a contract or agreement, the most we will pay on behalf of the vendor is the amount of insurance:

1. Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

\* \* \*

36.     The NW Primary Policies are, in part, subject to the following exclusions:

**2. Exclusions**

This insurance does not apply to:

**a.      Expected Or Intended Injury**
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.       Contractual Liability**
"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
(1) That the insured would have in the absence of the contract or agreement; or
(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:
   (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
   (b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\* \* \*

**k.      Damage To Your Product**
"Property damage" to "your product" arising out of it or any party of it.

\* \* \*

**m.    Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:
(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

\* \* \*

**n.    Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost, or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
(1) "Your product";
(2) "Your work"; or
(3) "Impaired property";

If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

\* \* \*

## III.    NATIONWIDE UMBRELLA POLICIES

37.     Nationwide issued a commercial umbrella liability policy to Smitty's, bearing policy number CU126853A, effective April 30, 2014 to April 30, 2015, which is subject to a $2,000,000 Each Occurrence limit, and a $2,000,000 Aggregate ("14-15 NW Umbrella Policy"). A true and correct copy of the 14-15 NW Umbrella Policy with premium information redacted is attached as Exhibit I.

38.     Nationwide issued a commercial umbrella liability policy to Smitty's, bearing policy number CU126853A, effective April 30, 2015 to April 30, 2016, which is subject to a $2,000,000 Each Occurrence limit, and a $2,000,000 Aggregate ("15-16 NW Umbrella Policy"). A true and correct copy of the 15-16 NW Umbrella Policy with premium information redacted is attached as Exhibit J.

39.     Nationwide issued a commercial umbrella liability policy to Smitty's, bearing policy number CU126853A, effective April 30, 2016 to April 30, 2017, which is subject to a $2,000,000 Each Occurrence limit, and a $2,000,000 Aggregate ("16-17 NW Umbrella Policy"). A true and correct copy of the 16-17 NW Umbrella Policy with premium information redacted is attached as Exhibit K.

40.     Nationwide issued a commercial umbrella liability policy to Smitty's, bearing policy number CU126853A, effective April 30, 2017 to April 30, 2018, which is subject to a $2,000,000 Each Occurrence limit, and a $2,000,000 Aggregate ("17-18 NW Umbrella Policy"). A true and correct copy of the 17-18 NW Umbrella Policy with premium information redacted is attached as Exhibit L. The 14-18 NW Umbrella Policies are collectively referred to herein as "NW Umbrella Policies."

41.     Upon information and belief, the parties hereto do not dispute that Nationwide owes no obligation to Smitty's and Tractor Supply under the "bodily injury" and "personal and advertising injury" coverages of the NW Umbrella Policies.

42.     The "property damage" liability coverage afforded under NW Umbrella Policies provide, in part, as follows:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. We will have the right to defend, or to participate in the defense of, the insured against any

other "suit" seeking damages to which this insurance may apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit" for which we have the duty to defend.

43.   The NW Umbrella Policies further provide as follows:

* * *

c.   This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1.a. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

d.   "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1.a. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

* * *

44.   The NW Umbrella Policies are subject to a "Who Is An Insured" provision that provides, in part, as follows:

## SECTION II – WHO IS AN INSURED

* * *

3.   Any additional insured under any policy of "underlying insurance" will automatically be an insured under this insurance.

Subject to Section **III** – Limits Of Insurance, if coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

    a.  Required by the contract or agreement, less any amounts payable by any "underlying insurance"; or

    b.  Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

45.    The NW Umbrella Policies are subject to the following definitions:

**SECTION V - DEFINITIONS**

\* \* \*

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
    a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
    b.  You have failed to fulfill the terms of a contract or agreement;
      if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work", or your fulfilling the terms of the contract or agreement.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

18. "Property damage" means:
    a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
    b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

19. "Retained limit" means the available limits of "underlying insurance" scheduled in the Declarations or the "self-insured retention", whichever applies.

\* \* \*

23. "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

24. "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule of "underlying insurance."

\* \* \*

27. "Your product":

16

    a. Means:
        (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
            (a) You;
            (b) Others trading under your name; or
            (c) A person or organization whose business or assets you have acquired; and
        (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
    b. Includes:
        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
        (2) The providing of or failure to provide warnings or instructions.
    c. Does not include vending machines or other property rented to or located for the use of others but not sold.

                    * * *

46.    By endorsement, the NW Umbrella Policies define "insured contract" as follows:

"Insured contract" means
                    * * *

    g. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.
                    * * *

47.    The NW Umbrella Policies are subject to the following exclusions:

**2. Exclusions**

This insurance does not apply to:

**a.  Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\* \* \*

**n.  Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

\* \* \*

**p.  Damage To Impaired Property Or Property**

Not Physically Injured "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**q.  Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

## III.   TENDER AND MEDIATION

48.     Subject to a complete reservation of rights, Nationwide agreed to defend Smitty's and Tractor Supply against the *Hornbeck* Action.

49.     On June 26, 2019, the parties participated in a mediation with respect to the *Hornbeck* Action.

50.     Nationwide agreed it would not object to the insureds entering into an agreement; however, it did not concede coverage defenses and reserved all rights, including but not limited, its rights relating to funding the agreement and allocation between potentially covered and uncovered damages.

## IV.   HORNBECK SETTLEMENT

51.     On or around July 30, 2010, the Underlying Plaintiffs and Smitty's and Tractor Supply agreed to settle the *Hornbeck* Action for $1,700,000 ("Settlement Agreement" or "*Hornbeck* Settlement"). *See* Settlement Agreement attached hereto as Exhibit M.

52.     The Settlement Agreement purports to resolve the following claims:

36. Release. Plaintiffs, individually, on behalf of the Members of the Settlement Class, and on behalf of Plaintiffs' respective partners, agents, representatives, heirs, executors, personal representatives, successors, and assigns (the "Releasing Parties"), hereby release and forever discharge Defendants, together with their respective past, present, and future officers, employees, agents, representatives, distributors, downstream retail customers and/or resellers, attorneys, accountants, insurers, predecessors, successors, assigns, legal representatives, parent companies, subsidiaries and affiliates from any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever,

that are asserted, or could have been asserted in this case, arising out of or relating to the purchase of Super Trac 303 Tractor Hydraulic Fluid in Missouri during the Class Period. As of the Effective Date, the Releasing Parties shall be deemed to have, and by operation of the Final Approval Order shall have, fully, finally and forever released, relinquished, and discharged all Released Claims against the Released Parties pursuant to the terms of this Settlement Agreement. The Parties agree that other retailers who cooperate in providing Settlement Class Member purchaser and purchase information shall be specifically named as Released Parties in the proposed Final Approval Order.

53.     The Settlement Agreement defines "Settlement Class," in part, as "all persons and other entities who purchases Super Trac 303 Tractor Hydraulic Fluid in Missouri at any point in time from May 25, 2013 to present, excluding those who purchased for resale."

54.     As to distribution of the $1,700,000, Paragraph 28 of the Settlement Agreement provides, in part, as follows:

> 28.   Class Settlement Fund. Defendants shall cause to be paid One Million Seven Hundred Thousand Dollars ($1,700,000.00) pursuant to Section VII.B hereof to settle the Action and obtain the release set forth in Section VI hereof. That amount shall establish a settlement fund (the "Class Settlement Fund") from which shall be paid (a) claims of Settlement Class Members, (b) all settlement administration and notice costs, (c) all incentive awards to Class Representatives as Ordered by the Court, and (d) all attorneys' fees and expenses of Class Counsel as Ordered by the Court. No amount of the Class Settlement Fund shall revert to Defendants. The portion remaining in the Class Settlement Fund after payment of all settlement administration/notice costs, Class Representative incentive awards as Ordered by the Court, and Class Counsel's attorneys' fees/expenses as Ordered by the Court shall be distributed to Qualified Settlement Class Members as follows:
>
> a.   Automatic Relief: 50% of this remaining portion of the Class Settlement Fund shall be used to provide each Qualified Settlement Class Member automatic damages calculated as a percentage of the purchase price of his/her/its Super S Super Trac 303 Tractor Hydraulic Fluid purchases during the Class Period. Each Qualified Settlement Class Member shall be paid the settlement distribution amount for each unit of Super Trac 303 purchased by the Qualified Settlement Class Member during the Class Period and not returned. This is to compensate for the property damage generally sustained. The initial settlement distribution amount for each unit of Super Trac 303 is estimated to be an amount equal to 50% of that unit's estimated average sale price during the class

period: $12 for each 5-gallon bucket purchased; $4 for each 1-gallon jug purchased; $6 for each 2-gallon jug purchased; and $90 for each 55-gallon drum purchased. If the total amount of valid claims for automatic relief exceeds the amount in this fund, awards will be decreased on a pro rata basis. Any unclaimed monies after payment of Qualified Settlement Class Members' automatic relief shall go into the Repair/Parts/Specific Damage Fund described in (b), below.

b.  Repairs/Parts/Specific Damage Claim Fund Relief: 50% of this remaining portion of the Class Settlement Fund, plus any remaining monies after payment of Qualified Settlement Class Members' automatic relief as set forth in a. above, shall be used to pay claims submitted by Qualified Settlement Class Members for the costs of any equipment repairs, parts purchases, and/or specific damage to equipment that resulted from, in whole or in part, the use of Super Trac 303 during the class period. The Repairs/Parts/Specific Damage Claims Fund is being established to reimburse Qualified Settlement Class Members for equipment repairs, parts purchases and/or specific equipment damage that resulted from, in whole or in part, the use of Super Trac 303 in said equipment during the Class Period. Such repairs, parts purchases, and/or equipment damage may relate to, without limitation, damage to seals, pumps, filters, gears, and clutch and brake systems, power take-off (PTO) systems and/or losses incurred as a result of equipment being damaged beyond reasonable repair which occurred as a result of damage and increased or excessive wear resulting from use of Super Trac 303. Such increased wear and damage may include, without limitation, scratching, corrosive wear, rippling, ridging, pitting, spalling and scoring of the gears and metal components, seal damage, spiral gear damage, metal abrasion, corrosion, surface wear, clutch wear and breakage, wet brake damage, pump failure, leakage, and damage from deposits, sludging and thickening. Claims for such repair/parts/specific damage shall require submission of the Claim Form along with receipts or other paperwork (if available) related to losses, repairs and/or parts, and with the Qualified Settlement Class Member's statement, under penalty of perjury, that said equipment repairs, parts purchases and/or specific equipment damage or losses resulted from, in whole or in part, the use of Super Trac 303 during the class period. If the total amount of said losses, repairs and/or parts purchases submitted in valid claims by Qualified Settlement Class Members exceeds the amount in this fund, plus the amount of unclaimed a. funds, awards will be decreased on a pro rata basis. If monies are remaining in this Repairs/Part/Specific Damage Fund after all valid claims are paid, those remaining funds shall be added to the automatic relief distribution and shared pro rata by all Qualified Settlement Class Members based on the same automatic relief distribution formula set forth in a. above.

c.  NOTE: Plaintiffs allege that this monetary relief is required because property damage has been suffered by each and every purchaser of the Super S Super Trac 303 THF product. That damage has occurred to the equipment in which

> the Super S Super Trac 303 THF was used even if the owner has not yet had to
> pay for repair parts or service.
>
> * * *

55.     In accordance with the terms of the Settlement Agreement, the $1,700,000 was deposited in a Class Settlement Fund and allocated as follows:

> (1) $100,000 for Settlement Administration and Notice Costs;
> (2) $20,000 for Incentive Awards;
> (3) $150,000 for Class Counsel's Expenses;
> (4) $511,500 for Class Counsel's Attorneys' Fees;
> (5) $128,666 under Paragraph 28(a) - Automatic Relief; and
> (6) $789,834 under Paragraph 28(b) -Repairs/Parts/Specific Damage Claim Fund
>     Relief.

56.     Subject to a complete reservation of rights, Nationwide paid $80,000 of the Settlement Administration and Notice Costs due under the *Hornbeck* Settlement.

57.     Upon information and belief, AIG paid the remaining $20,000 of the Settlement Administration and Notice Costs due under the *Hornbeck* Settlement.

58.     Upon information and belief, Smitty's paid the remaining $1,600,000 due under the *Hornbeck* Settlement.

59.     Upon information and belief, Smitty's seek reimbursement of some or all of the $1,600,000 it paid with respect to the *Hornbeck* Settlement.

**COUNT I**
**DECLARATORY RELIEF**
**Nationwide Does Not Owe Any Obligation to Indemnify**
**the Defendants under NW Primary Policies for Any Portion of the Settlement**
**That Does Not Seek Damages Because of "Property Damage"**

60.     Nationwide incorporates and restates the allegations of paragraph 1 through 59 above as if fully set forth herein.

61.     The "property damage" liability coverage of the NW Primary Policies provides that Nationwide will pay those sums that the insured becomes legally obligated to pay as damages because of "property damage."

62.     The NW Primary Policies define "property damage" as follows:

> 17.     "Property damage" means:
> a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*  *  *

63.     Damages arising from reimbursement to consumers for a product that failed to meet its specifications do not qualify as "property damage".

64.     Nationwide does not owe any obligation to indemnify Smitty's or Tractor Supply for any portion of the *Hornbeck* Settlement that does not constitute damages because of "property damage," including but not limited to:

> a)  any portions attributable to Count VI -Unjust Enrichment;
> b)  the $128,666 paid under Paragraph 28(a) - Automatic Relief;
> c)  the $20,000 allocated for payment of Incentive Awards;
> d)  any sums that do not constitute damages to third party property caused by the use of the 303 THF Product.

65.     Smitty's and Tractor Supply have failed to sustain their burden of demonstrating which portions of the *Hornbeck* Settlement, if any, constitute damages because of "property damage."

66.     Accordingly, Nationwide does not owe any obligation to indemnify Smitty's or Tractor Supply for the *Hornbeck* Settlement under the NW Primary Policies.

## COUNT II
## DECLARATORY RELIEF

**Nationwide Does Not Owe Any Obligation to Indemnify the Defendants Under the NW Primary Policies for Any Portion of the Settlement That Does Not Seek Damages Caused by an "Occurrence"**

67.     Nationwide incorporates and restates the allegations of paragraph 1 through 59 above as if fully set forth herein.

68.     The "property damage" liability coverage of the NW Primary Policies only provide coverage for damages because of "property damage" caused by an "occurrence."

69.     The NW Primary Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

70.     The alleged damages in the *Hornbeck* Action were not caused by an accident.

71.     Nationwide does not owe any obligation to indemnify Smitty's or Tractor Supply for any portion of the *Hornbeck* Settlement that does not constitute damages because of "property damage" caused by an "occurrence," including but not limited to:

    a)  any portions attributable to Count I – Violation of MMPA;
    b)  any portions attributable to Count IV – Fraudulent Misrepresentation;
    c)  any portions attributable to Count V – Negligent Misrepresentation;
    d)  any portions attributable to Count VI – Unjust Enrichment;
    e)  any damages attributable to the Defendants' intentional conduct;
    f)  the $661,500 allocated for payment of Class Counsel's Expenses and Attorney's Fees.

72.     Smitty's and Tractor Supply have failed to sustain their burden of demonstrating which portions of the *Hornbeck* Settlement, if any, constitute damages because of "property damage" caused by an "occurrence."

73.     Accordingly, Nationwide does not owe any obligation to indemnify Smitty's or Tractor Supply for the *Hornbeck* Settlement under the NW Primary Policies.

**COUNT III**
**DECLARATORY RELIEF**
**Nationwide Does Not Owe Any Obligation to Indemnify the Defendants for Any Portion of the Settlement That Does Not Seek Damage Because of "Property Damage" That Occurred During the Policy Periods of the NW Primary Policies**

74.     Nationwide incorporates and restates the allegations of paragraph 1 through 59 above as if fully set forth herein.

75.     The "property damage" liability coverage of the NW Primary Policies only provides coverage for damages because of "property damage" that occurs during the policy period of the NW Primary Policies.

76.     The *Hornbeck* Settlement purports to resolve all claims that could have been asserted in the *Hornbeck* Action, arising out of or relating to the purchase of Super Trac 303 Tractor Hydraulic Fluid in Missouri at any point in time from May 25, 2013 to present, excluding those who purchased for resale."

77.     Smitty's and Tractor Supply have failed to sustain their burden of demonstrating which portions of the *Hornbeck* Settlement, if any, constitute damages because of "property damage" that occurred during the policy period of the NW Primary Policies.

78.     Accordingly, Nationwide does not owe any obligation to indemnify Smitty's or Tractor Supply for the *Hornbeck* Settlement under the NW Primary Policies.

**COUNT IV**
**DECLARATORY RELIEF**
**Alternatively, the Prior Knowledge Provisions Apply to Preclude Coverage Under the 18-20 NW Primary Policies**

79.     Nationwide incorporates and restates the allegations of paragraph 1 through 59 above as if fully set forth herein.

80.     The NW Primary Policies are, in part, subject to the following provisions:

(3) Prior to the policy period, no insured listed under Paragraph **1**. of Section **II** ---- Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** ---- Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** ---- Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

\* \* \*

81.     In October 2017, the MDA announced that it performed testing on the 303 THF Products, which revealed that the products were underperforming to the point damage was likely to result from use.

82.     On October 12, 2017, the MDA issued a letter to Smitty's with regard to Super S Super Trac 303 THF in which Smitty's was ordered to remove the product from sale until changes are made to correct the labeling or the product.

83.     In November 2017, the MDA issued a stop sale banning the sale of 303 THF Products in the State of Missouri.

84.     Smitty's and Tractor Supply knew of the complained of "property damage" prior to the inception of the 18-20 NW Primary Policies.

85.     Accordingly, Nationwide owes no obligation to indemnify Smitty's or Tractor Supply for the *Hornbeck* Settlement under the 18-20 NW Primary Policies.

**COUNT V**
**DECLARATORY RELIEF**
**Alternatively, Nationwide Does Not Owe Any Obligation to the Defendants for the Settlement Under the NW Primary Policies Based on the Doctrines of Fortuity, Loss In Progress and Known Risk**

86.     Nationwide incorporates and restates the allegations of paragraph 1 through 59 above as if fully set forth herein.

87.     The fortuity doctrine combines the principles of known risk and "loss in progress" and holds that insurance coverage is precluded where the insured is aware of an ongoing progressive or known risk at the time the policy is purchased.

88.     Smitty's knew that the 303 Products were defective and that such would result in "property damage" to consumers prior to the inception of the Smitty's Primary Policies.

89.     In October 2017, the MDA announced that it performed testing on the 303 THF Products, which revealed that the products were underperforming to the point damage was likely to result from use.

90.     On October 12, 2017, the MDA issued a letter to Smitty's with regard to Super S Super Trac 303 THF in which Smitty's was ordered to remove the product from sale until changes are made to correct the labeling or the product.

91.     In November 2017, the MDA issued a stop sale banning the sale of 303 THF Products in the State of Missouri.

92.     Smitty's and Tractor Supply knew that the 303 THF Product was defective prior to the inception of the 18-20 NW Primary Policies.

93.     Accordingly, Nationwide owes no obligation to indemnify Smitty's or Tractor Supply for the *Hornbeck* Settlement under the NW Primary Policies.

**COUNT VI**
**DECLARATORY RELIEF**
**Alternatively, The Your Product Exclusion Applies to Preclude Coverage Under NW Primary Policies for Any Portion of the Settlement Attributable to the Reimbursement of the Cost of the Defendants' Product**

94.     Nationwide incorporates and restates the allegations of paragraph 1 through 59 above as if fully set forth herein.

95.     The NW Primary Policies are subject to an exclusion that provides, in part, as follows ("Your Product Exclusion"):

> **2. Exclusions**
>
> This insurance does not apply to:
> * * *
> **k.  Damage To Your Product**
>
>> "Property damage" to "your product" arising out of it or any party of it.
>> * * *

96.     The Your Product Exclusion, in part, precludes coverage for the reimbursement or replacement of the insured's defective product.

97.     In accordance with the terms of the Settlement Agreement, $128,666 of the Settlement Fund was paid under Paragraph 28(a) - Automatic Relief of the Settlement Agreement.

98.     Paragraph 28(a) - Automatic Relief provides for the reimbursement of a percentage of each Qualified Settlement Class Member's purchase price of the Super S Super Trac 303 Tractor Hydraulic Fluid.

99.     Even if the $128,666 constituted damages because of "property damage," the Your Product Exclusion would nonetheless apply to preclude coverage for the same.

100.    Nationwide has no obligation to indemnify Smitty's or Tractor Supply under the NW Primary Policies for the $128,666 distributed under Paragraph 28(a) – Automatic Relief of the Settlement Agreement or any other portion of the *Hornbeck* Settlement that compensates the Underlying Plaintiffs for the reimbursement or replacement of the complained of 303 THF Product.

**COUNT VII**
**DECLARATORY RELIEF**
**Alternatively, the Impaired Property Exclusion Applies to Preclude Coverage Under NW Primary Policies for Any Portion of the Settlement Attributable to the Reimbursement of the Cost of the Defendants' Product**

101.    Nationwide incorporates and restates the allegations of paragraph 1 through 59 above as if fully set forth herein.

102.    The NW Primary Policies are subject to an exclusion that provides, in part, as follows ("Impaired Property Exclusion"):

**2. Exclusions**

This insurance does not apply to:

* * *

    **m.**    **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:
(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

* * *

103.    The Impaired Property Exclusion, in part, precludes coverage for the reimbursement or replacement of the insured's defective product.

104.    In accordance with the terms of the Settlement Agreement, $128,666 of the Settlement Fund was paid under Paragraph 28(a) - Automatic Relief of the Settlement Agreement.

105.    Paragraph 28(a) - Automatic Relief provides for the reimbursement of a percentage of each Qualified Settlement Class Member's purchase price of the Super S Super Trac 303 Tractor Hydraulic Fluid.

106.    Even if the $128,666 constituted damages because of "property damage," the Impaired Property Exclusion would nonetheless apply to preclude coverage for the same.

107.    Accordingly, Nationwide has no obligation to indemnify Smitty's or Tractor Supply under the NW Primary Policies for the $128,666 distributed under Paragraph 28(a) – Automatic Relief of the Settlement Agreement or any other portion of the *Hornbeck* Settlement that compensates the Underlying Plaintiffs for the reimbursement or replacement of the complained of 303 THF Product.

<u>**COUNT VIII**</u>
<u>**DECLARATORY RELIEF**</u>
**Alternatively, the Product Recall Exclusion Applies to Preclude Coverage Under NW Primary Policies for Any Portion of the Settlement Attributable to the Reimbursement of the Cost of the Defendants' Product**

108.    Nationwide incorporates and restates the allegations of paragraph 1 through 59 above as if fully set forth herein.

109.    The NW Primary Policies are subject to an exclusion that provides, in part, as follows ("Product Recall Exclusion"):

**2. Exclusions**

This insurance does not apply to:

\* \* \*

**n.    Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost, or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(4) "Your product";

(5) "Your work"; or

(6) "Impaired property";

If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

\* \* \*

110.    The Product Recall Exclusion, in part, precludes coverage for the reimbursement or replacement of the insured's defective product.

111.    In accordance with the terms of the Settlement Agreement, $128,666 of the Settlement Fund was paid under Paragraph 28(a) - Automatic Relief of the Settlement Agreement.

112.    Paragraph 28(a) - Automatic Relief provides for the reimbursement of a percentage of each Qualified Settlement Class Member's purchase price of the Super S Super Trac 303 Tractor Hydraulic Fluid.

113.    Even if the $128,666 constituted damages because of "property damage," the Product Recall Exclusion would nonetheless apply to preclude coverage for the same.

114.    Nationwide has no obligation to indemnify Smitty's or Tractor Supply under the NW Primary Policies for the $128,666 distributed under Paragraph 28(a) – Automatic Relief of the Settlement Agreement or any other portion of the *Hornbeck* Settlement that compensates the Underlying Plaintiffs for the reimbursement or replacement of the complained of 303 THF Product.

## COUNT IX
## DECLARATORY RELIEF
**Alternatively, the Expected or Intended Injury Exclusion Also Applies to Preclude Coverage For Smitty's Under the NW Primary Policies**

115.    Nationwide incorporates and restates the allegations of paragraph 1 through 59 above as if fully set forth herein.

116.    The NW Primary Policies are subject to the following exclusion:

**2. Exclusions**

This insurance does not apply to:

**a.    Expected Or Intended Injury**
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

117.    Prior to inception of each NW Primary Policy, Smitty's knew that the 303 THF Products were defective and that such would result in "property damage" to consumers.

118.    Accordingly, Nationwide does not owe any obligation to indemnify Smitty's for the *Hornbeck* Settlement under the NW Primary Policies.

## COUNT X
## DECLARATORY RELIEF
**Alternatively, the *Hornbeck* Action only involved a single "occurrence"**

119.    Nationwide incorporates and restates the allegations of paragraph 1 through 59 above as if fully set forth herein.

120.    Even if the *Hornbeck* Settlement involves damages, because of "property damage" caused by an "occurrence," the *Hornbeck* Settlement only involves a single "occurrence" and only implicates one "occurrence" limit.

121.   The NW Primary Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

122.   The NW Primary Policies state as follows:

**SECTION III --- - LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
   a. Insureds;
   b. Claims made or "suits" brought; or
   c. Persons or organizations making claims or bringing "suits".
2. The General Aggregate Limit is the most we will pay for the sum of:
   a. Medical expenses under Coverage C;
   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and
   c. Damages under Coverage B.
3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".
                           * * *
5. Subject to Paragraph 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:
   a. Damages under Coverage A; and
   b. Medical expenses under Coverage C because of all "bodily injury" and "property damage" arising out of any one "occurrence".

123.   All of the complained of damage was allegedly caused by Smitty's production of defective tractor hydraulic fluid.

124.   Accordingly, the *Hornbeck* Action only involved a single "occurrence."

**<u>COUNT XI</u>**
**<u>DECLARATORY RELIEF</u>**
**Tractor Supply Does Not Qualify as an Insured or Additional Insured Under the NW Primary Policies**

125.   Nationwide incorporates and restates the allegations of paragraph 1 through 59 above as if fully set forth herein.

126.    The NW Primary Policies are subject to a "Who Is An Insured" Provision that provides, in part as follows:

**SECTION II ---- WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

\* \* \*

d.  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

\* \* \*

127.    Upon information and belief, Tractor Supply is not an "executive officer," director or stockholder of Smitty's.

128.    Tractor Supply does not qualify as an insured under the "Who Is An Insured Provision.

129.    The 13-15 NW Primary Policies are not subject to any provision or endorsement under which Tractor Supply would qualify as an insured.

130.    Nationwide has no obligation to indemnify Tractor Supply under the 13-15 NW Primary Policies on the basis that Tractor Supply does not qualify as an insured under the 13-15 NW Primary Policies.

131.    The 16-20 NW Primary Policies are subject to an AI-Vendors Endorsement that provides, in part, as follows:

\* \* \*

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
|  |  |

34

| Any person(s) or organization(s) with whom "you" have agreed in a valid written contract or written agreement, executed prior to loss, that such person(s) or organization(s) be added as an additional insured on "your" policy, as provided under this endorsement. | ALL PRODUCTS |
|---|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II ---- Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to throughout this endorsement as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business.

However:

1. The insurance afforded to such vendor only applies to the extent permitted by law; and
2. If coverage provided to the vendor is required by a contract or agreement, the insurance afforded to such vendor will not be broader than that which you are required by the contract or agreement to provide for such vendor.

**B.** With respect to the insurance afforded to these vendors, the following additional exclusions apply:

1. The insurance afforded the vendor does not apply to:
   * * *
   h. "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf . . .

* * *

132.    Upon information and belief, Smitty's and Tractor Supply may have entered into a written agreement.

133.    It is not clear from the face of the agreement whether such was executed prior to the loss complained of in the *Hornbeck* Action.

134.    Tractor Supply does not qualify as an additional insured under the AI-Vendors Endorsement for its sole negligence.

135.    Nationwide owes no obligation to indemnify Tractor Supply under the NW Primary Policies because Tractor Supply does not qualify as an insured.

## COUNT XII
## DECLARATORY RELIEF
**The Contractual Liability Exclusion Applies to Preclude Coverage For Any Contractual Indemnity That May be Owed By Smitty's to Tractor Supply**

136.    Nationwide incorporates and restates the allegations of paragraph 1 through 59 above as if fully set forth herein.

137.    The NW Primary Policies are subject to the following exclusion:

**b.    Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

* * *

138.    Assuming a valid contract exists between Smitty's and Tractor Supply, the Contractual Liability Exclusion would apply to preclude coverage for any Contractual Indemnity that Smitty's may owe to Tractor Supply under the NW Primary Policies.

## COUNT XIII
### DECLARATORY RELIEF
**The NW Umbrella Policies Are Not Implicated by the *Hornbeck* Settlement**

139.    Nationwide incorporates and restates the allegations of paragraphs 1 through 59 above as if fully set forth herein.

140.    Coverage under the NW Umbrella Policies only applies to "ultimate net loss" in excess of the "retained limit" because of "property damage" caused by an "occurrence" during the policy period.

141.    "Retained limit" is defined to include the available limits of "underlying insurance" scheduled in the Declarations.

142.    The 14-18 NW Primary Policies each constitute "underlying insurance" for the NW Umbrella Policy that possesses the same policy period.

143.    The limits of the 14-18 NW Primary Policies have not been exhausted, and thus, coverage under the NW Umbrella Policies is not implicated by the *Hornbeck* Settlement.

144.    Nationwide does not owe any obligation to indemnify Smitty's or Tractor Supply for the *Hornbeck* Settlement under the NW Umbrella Policies.

**COUNT XIV**
**DECLARATORY RELIEF**
**Alternatively, Nationwide Does Not Owe Any Obligation to Indemnify the Defendants Under the NW Umbrella Policies for Any Portion of the Settlement That Does Not Seek Damages Because of "Property Damage" Caused by an "Occurrence" During Policy Period**

145.    Nationwide incorporates and restates the allegations of paragraph 1 through 59 above as if fully set forth herein.

146.    Coverage under the NW Umbrella Policies only applies to "ultimate net loss" in excess of the "retained limit" because of "property damage" caused by an "occurrence" during the policy period.

147.    The NW Umbrella Policies define "property damage" and "occurrence," in part, as follows:

> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> * * *
>
> 18. "Property damage" means:
>   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
>
> * * *

148.    The *Hornbeck* Settlement purports to resolve all claims that could have been asserted in the *Hornbeck* Action, arising out of or relating to the purchase of Super Trac 303 Tractor Hydraulic Fluid in Missouri at any point in time from May 25, 2013 to present, excluding those who purchased for resale.

149.    Nationwide does not owe any obligation to indemnify Smitty's or Tractor Supply any portion of the *Hornbeck* Settlement that does not constitute damages because of "property damage," including but not limited to:

    a)  any portions attributable to Count VI -Unjust Enrichment;
    b)  the $128,666 paid under Paragraph 28(a) - Automatic Relief;
    c)  the $20,000 allocated for payment of Incentive Awards;
    d)  any sums that do not constitute damages to third party property caused by the use of the 303 THF Product.

150.    Nationwide does not owe any obligation to indemnify Smitty's or Tractor Supply any portion of the *Hornbeck* Settlement that does not constitute damages because of "property damage" caused by an "occurrence," including but not limited to:

    a)  any portions attributable to Count I – Violation of MMPA;
    b)  any portions attributable to Count IV – Fraudulent Misrepresentation;
    c)  any portions attributable to Count V – Negligent Misrepresentation;
    d)  any portions attributable to Count VI – Unjust Enrichment;
    e)  any damages attributable to the Defendants' intentional conduct;
    f)  the $661,500 allocated for payment of Class Counsel's Expenses and Attorney's Fees.

151.    Nationwide does not owe any obligation to indemnify Smitty's or Tractor Supply for any portion of the *Hornbeck* Settlement that does not serve as compensation for damages because of "property damage" that occurred during the policy periods of the NW Umbrella Policies.

152.    Smitty's and Tractor Supply have failed to sustain their burden of demonstrating which portions of the *Hornbeck* Settlement, if any, constitute damages because of "property damage" caused by an "occurrence" that occurred during the policy period of the NW Umbrella Policies.

153.    Accordingly, Nationwide does not owe any obligation to indemnify Smitty's or Tractor Supply for the *Hornbeck* Settlement under the NW Umbrella Policies.

**COUNT XV**
**DECLARATORY RELIEF**
**Alternatively, the Your Product, Impaired Property, and Product Recall Exclusions Apply**
**to Preclude Coverage Under the NW Umbrella Policies for Any Portion of the Settlement**
**Attributable to the Reimbursement of the Cost of the Defendants' Product**

154.    Nationwide incorporates and restates the allegations of paragraph 1 through 59

above as if fully set forth herein.

155.    The NW Umbrella Policies are subject to the following exclusions:

**2. Exclusions**

This insurance does not apply to:

* * *

**n.  Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

* * *

**p.  Damage To Impaired Property Or Property**

Not Physically Injured "Property damage" to "impaired property" or
property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your
    product" or "your work"; or
(2) A delay or failure by you or anyone acting on your behalf to perform
    a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising
out of sudden and accidental physical injury to "your product" or "your
work" after it has been put to its intended use.

**q.  Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others
for the loss of use, withdrawal, recall, inspection, repair, replacement,
adjustment, removal or disposal of:
(1) "Your product";
(2) "Your work"; or
(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the
market or from use by any person or organization because of a known

40

or suspected defect, deficiency, inadequacy or dangerous condition in
it.

\* \* \*

156.    The Your Product, Impaired Property and Product Recall Exclusions each preclude
coverage for the reimbursement or replacement of the insured's defective product.

157.    In accordance with the terms of the Settlement Agreement, $128,666 of the
Settlement Fund was paid under Paragraph 28(a) - Automatic Relief of the Settlement Agreement.

158.    Paragraph 28(a) - Automatic Relief provides for the reimbursement of a percentage
of each Qualified Settlement Class Member's purchase price of the Super S Super Trac 303 Tractor
Hydraulic Fluid.

159.    Even if the $128,666 paid under Paragraph 28(a) - Automatic Relief constituted
damages because of "property damage," the Your Product Exclusion would nonetheless apply to
preclude coverage for the same.

160.    Nationwide has no obligation to indemnify Smitty's or Tractor Supply under the
NW Umbrella Policies for the $128,666 distributed under Paragraph 28(a) – Automatic Relief of
the Settlement Agreement or any other portion of the *Hornbeck* Settlement that compensates the
Underlying Plaintiffs for the reimbursement or replacement of the complained of 303 THF
Product.

## COUNT XVI
## DECLARATORY RELIEF
### Alternatively, the Expected or Intended Injury Exclusion Also Applies to Preclude
### Coverage For Smitty's Under the NW Umbrella Policies

161.    Nationwide incorporates and restates the allegations of paragraph 1 through 59
above as if fully set forth herein.

162.    The NW Umbrella Policies are subject to the following exclusion:

**2. Exclusions**

This insurance does not apply to:

**a.  Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

* * *

163.  Prior to inception of each NW Umbrella Policy, Smitty's knew that the 303 THF Products were defective and that such would result in "property damage" to consumers.

164.  Accordingly, Nationwide does not owe any obligation to indemnify Smitty's for the *Hornbeck* Settlement under the NW Umbrella Policies.

**COUNT XVII**
**DECLARATORY RELIEF**
**Tractor Supply Does Not Qualify as an Insured Under the NW Umbrella Policies**

165.  Nationwide incorporates and restates the allegations of paragraph 1 through 59 above as if fully set forth herein.

166.  Tractor Supply is not listed as a named insured on the NW Umbrella Policies.

167.  The NW Umbrella Policies are subject to a "Who Is An Insured" provision that provides, in part, as follows:

**SECTION II – WHO IS AN INSURED**

* * *

3.  Any additional insured under any policy of "underlying insurance" will automatically be an insured under this insurance.

Subject to Section **III** – Limits Of Insurance, if coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

a. Required by the contract or agreement, less any amounts payable by any "underlying insurance"; or

b. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

* * *

168.     Tractor Supply does not qualify as an insured under the 14-18 NW Primary Policies and thus, does not qualify as an insured under the NW Umbrella Policies.

169.     Nationwide does not owe any obligation to indemnify Tractor Supply under the NW Umbrella Policies because it does not qualify as an insured.

<u>COUNT XVIII</u>
<u>DECLARATORY RELIEF</u>
**The Contractual Liability Exclusion Applies to Preclude Coverage Under the NW Umbrella Policies For Any Contractual Indemnity That May be Owed By Smitty's to Tractor Supply**

170.     Nationwide incorporates and restates the allegations of paragraph 1 through 59 above as if fully set forth herein.

171.     The NW Umbrella Policies are subject to the following exclusion:

**b. Contractual Liability**
"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.
Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:
(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

* * *

172.    Assuming a valid contract exists between Smitty's and Tractor Supply, the Contractual Liability Exclusion would apply to preclude coverage for any Contractual Indemnity that Smitty's may owe to Tractor Supply under the NW Umbrella Policies.

### COUNT XV
### Alternatively, No Duty to Indemnify the Defendants is Owed Under the 14-18 Umbrella Policies Based on Doctrines of Fortuity, Loss In Progress and Known Risk

173.    Nationwide incorporates and restates the allegations of paragraph 1 through 59 above as if fully set forth herein.

174.    The fortuity doctrine combines the principals of known risk and "loss in progress" and holds that insurance coverage is precluded where the insured is aware of an ongoing progressive or known risk at the time the policy is purchased.

175.    Upon information and belief, Smitty's knew that the 303 Products were defective and that such would result in "property damage" to consumers prior to the inception of the NW Umbrella Policies.

176.    Nationwide owes no obligation to indemnify the Defendants under the 14-18 NW Umbrella Policies.

WHEREFORE, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, requests that this Honorable Court enter an order in its favor and against the Defendants as follows:

a.    Declaration that Nationwide does not owe any obligation to indemnify Smitty's and Tractor Supply for the *Hornbeck* Settlement under the NW Primary Policies.

b.    Declaration that Nationwide does not owe any obligation to indemnify Smitty's and Tractor Supply for the *Hornbeck* Settlement under the NW Umbrella Policies.

c.      Alternatively, a declaration as to what portions of the *Hornbeck* Settlement

Nationwide is required to indemnify Smitty's or Tractor Supply for.

d.      Awarding Nationwide such other and further relief as this Court deems just.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:    */s/ Jay Russell Sever*

Jay Russell Sever (Bar #23935)
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: 504-566-1311
Telecopier: 504-568-9130
jay.sever@phelps.com

**ATTORNEYS FOR NATIONWIDE
AGRIBUSINESS INSURANCE COMPANY**